ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI-DJ2025-063A

| | | |
|---|---|---|
| **SUCESIÓN DE ÁNGELA MARGARITA RAMÓN ROMERO t/c/c ÁNGELA M. RAMÓN DE RODRÍGUEZ t/c/c ÁNGELA M. RAMÓN, compuesta por sus hijas e hijo ROSÁNGELA JOSEFINA DE LA CONCEPCIÓN RODRÍGUEZ RAMÓN, ÁNGEL MIGUEL RODRÍGUEZ RAMÓN t/c/c ÁNGEL M. RODRÍGUEZ RAMÓN, ANÁNGELA DOLORES RODRÍGUEZ RAMÓN t/c/c AISHAH BEY RODRÍGUEZ RAMÓN y el viudo, MIGUEL ÁNGEL RODRÍGUEZ HERNÁNDEZ t/c/c MIGUEL A. RODRÍGUEZ HERNÁNDEZ**<br><br>Apelados<br><br>v.<br><br>**ANDRÉs J. RAMÓN MIRO, MAYRA MARTÍNEZ y la Sociedad Legal de Gananciales compuesto por ambos, MOISÉS ÁVILA SÁNCHEZ, FULANA DE TAL, y la Sociedad Legal de Gananciales compuesto por ambos; ORIENTAL BANK, COMPAÑÍA ABC; y el viudo, MIGUEL ÁNGEL RODRÍGUEZ HERNÁNDEZ t/c/c MIGUEL A. RODRÍGUEZ HERNÁNDEZ**<br><br>Apelantes | TA2026AP00345 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br><br>Civil Núm.:<br>**K AC2015-1140**<br><br><br><br>Sobre:<br>Incumplimiento de Contrato,<br>Cobro de Dinero,<br>Daños y Perjuicios,<br>Nulidad de Contrato |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece ante nos, el señor Andrés J. Ramón Miró (Sr. Ramón Miró), la señora Mayra Martínez, y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Ramón Martínez o parte apelante), mediante el presente recurso de apelación, y nos

solicita que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia Sala Superior de San Juan (TPI o foro primario) el 27 de febrero de 2026 y notificada el 3 de marzo de 2026.[1] Mediante el referido dictamen, el TPI declaró Ha Lugar la causa de acción incoada contra el matrimonio Ramón Martínez.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

**I.**

El caso de marras tiene su génesis el 21 de diciembre de 2015 cuando la Sucesión de la causante Ángela Margarita Ramón Romero (causante Ramón Romero) compuesta por sus hijos Rosángela Josefina De la Concepción, Ángel Miguel, Anángela Dolores Rodríguez Ramón y el viudo Miguel Ángel Rodríguez Hernández (Sucesión Ramón Romero o parte apelada) instó una *Demanda* por incumplimiento de contrato, cobro de dinero, daños y nulidad de contrato contra el sobrino de la causante Ramón Romero, el Sr. Ramón Miró, el matrimonio Ramón Martínez, el notario Moisés Ávila Sánchez, Fulana de Tal, y la Sociedad Legal de Gananciales compuesta por ambos, Oriental Bank (Oriental), Compañía ABC y del viudo, Miguel Ángel Rodríguez Hernández.[2]

La parte apelada alegó en su demanda que, el 14 de abril de 2011, el Sr. Ramón Miró suscribió un contrato en el cual se comprometió a saldar un préstamo con el Banco Bilbao Vizcaya Argentaria (BBVA)[3] mediante diecinueve (19) plazos. Para facilitar el otorgamiento del préstamo, la causante Ramón Romero, concedió como garantía de repago del préstamo dos (2) certificados de depósitos por las cuantías de $120,000.00 y $242,379.18. Además,

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) del Tribunal de Apelaciones (TA), Entrada Núm. 1, Apéndice Núm. 2.
[2] *Íd.*, Entrada Núm. 1, Apéndice Núm. 1.
[3] Según surge de la demanda Oriental Bank para el mes de enero de 2013 adquirió los activos de BBVA pasando las cuentas objeto de controversia a dicho banco. *Íd.*, a las págs. 3 y 5.

arguyó en la *Demanda* que para esa misma fecha el Sr. Ramón Miró suscribió con la causante Ramón Romero, un contrato de prenda y una carta de pignoración y autorización con el BBVA, garantizándose de esta forma el préstamo con los certificados de depósito con la condición de que el Sr. Ramón Miró los saldaría en diecinueve (19) plazos. Por último, arguyó que el Sr. Ramón Miró no les ha acreditado que efectuó los pagos y cumplió con el contrato y, por tanto, el dinero depositado de la sucesión no ha quedado liberado por Oriental.

En cuanto a su tercera causa de acción, esta fue dirigida contra Oriental. Surge de la demanda que la parte apelante reclamó la nulidad del contrato de prenda, así como la carta de pignoración y autorización, de probarse que la procedencia del dinero pignorado era ganancial. Culminado el descubrimiento de prueba, Oriental presentó una solicitud de sentencia sumaria parcial en la que solicitó la desestimación del pleito en su contra. A esos fines, el foro primario emitió *Sentencia Parcial*.[4] En su dictamen, adjudicó veintiocho (28) hechos incontrovertidos y declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* liberando a Oriental de la causa de acción incoada.[5]

Posteriormente, el 25 de octubre de 2023, la parte apelada presentó una *Moción en Solicitud que se dicte Sentencia Sumaria Parcial* acompañada de una declaración jurada por Ángel Miguel Rodríguez Ramón como miembro de la Sucesión apelada en la que sostuvo la inexistencia de hechos medulares en controversia.[6] La parte apelada sostuvo que la causante Ramón Romero garantizó un

---

[4] *Íd.*, Entrada Núm. 1, Apéndice Núm. 12.
[5] Inconforme, la parte apelada instó un recurso de *Apelación* en la cual le imputó al foro primario incidir en su determinación al desestimar la reclamación a favor de Oriental, tras concluir que la garantía para el préstamo concedido al señor Ramón Miró era de carácter privativo. En su *Sentencia*, KLAN202300367, el panel hermano confirmó la determinación del foro primario. *Íd.*, Entrada Núm. 1, Apéndice Núm. 17.
[6] *Íd.*, Entrada Núm. 1, Apéndice Núm. 6.

primer préstamo otorgado al Sr. Ramón Miró mediante la pignoración de dos certificados de depósito, los cuales sirvieron como garantía colateral hasta una cuantía máxima de $320,000.00, conforme a los términos consignados en la "Carta de Pignoración y Autorización". Asimismo, indicó que dicha obligación fue satisfecha el 14 de abril de 2011 y posteriormente sustituida por un segundo préstamo asumido el 21 de octubre de 2013, con fecha de vencimiento al 21 de octubre de 2018. Igualmente, sostuvo que los referidos certificados fueron consolidados y constituidos como garantía colateral por la suma de $300,000.00 para asegurar la segunda obligación contraída por el Sr. Ramón Miró, de conformidad con lo pactado en la "Cesión de Garantía de Préstamo u Otras Obligaciones". En consecuencia, la Sucesión Ramón Romero adujo que, debido al incumplimiento del Sr. Ramón Miró, Oriental no liberó el certificado pignorado. Por tal razón, suplicó del foro primario que ordenara a la parte apelante el pago de las sumas adeudadas como consecuencia de su incumplimiento contractual, así como la indemnización correspondiente por los daños causados.

Transcurrido el término provisto por las Reglas de Procedimiento Civil sin la presentación de un recurso en oposición, el foro primario dictó *Sentencia.* En su dictamen, declaró Ha Lugar la petición de sentencia sumaria y, consecuentemente, ordenó a la parte apelante al pago de lo adeudado.

Aun inconforme con la denegatoria del petitorio de reconsideración, el 6 de abril de 2026 la parte apelante presentó un recurso de apelación ante nos y planteó los siguientes señalamientos de error:

> **PRIMER ERROR: INCURRIÓ EN ERROR EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA SENTENCIA SUMARIA CUANDO LA PARTE PROMOVENTE DE LA MOCIÓN NO CUMPLIÓ CON LOS REQUISITOS PROCESALES ESTABLECIDOS POR EL TRIBUNAL SUPREMO.**

**SEGUNDO ERROR: INCURRIÓ EN ERROR EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA SENTENCIA SUMARIA CUANDO LA MISMA NO PROCEDÍA COMO CUESTIÓN DE DERECHO YA QUE DE LA DOCUMENTACIÓN EN EL EXPEDIENTE DEL CASO SURGE QUE LA PARTE DEMANDANTE NO TENÍA EL DERECHO A LA CONCESIÓN DE UN REMEDIO.**

Por su parte, el 6 de mayo de 2026, la Sucesión Ramón Romero radicó un *Alegato de la Parte Apelada*. En síntesis, reiteró que la parte apelante no identificó cuáles de los hechos estaban en controversia y no controvirtió las alegaciones interpuestas en la petición sumaria. La parte apelada adujo que el matrimonio Ramón Martínez tampoco se opuso a la solicitud de sentencia sumaria, y que los hechos de esta última estaban debidamente apoyados por prueba admisible. Por lo tanto, expuso que, según los hechos incontrovertidos y la prueba recopilada, una vez vencida la deuda, la Sucesión Ramón Romero tenía derecho a la retribución de la garantía pignorada.

Contando con el expediente ante nos, al igual que el beneficio de la comparecencia de ambas partes, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

## II.

### A.

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, establece el mecanismo procesal de la sentencia sumaria. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales y que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Service*, 198 DPR 6, 19-20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este procedimiento, una parte puede solicitar que el

tribunal dicte sentencia sumaria sobre la totalidad o parte de la reclamación, y así se promueve la descongestión de calendarios. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

De igual modo, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que sean claros; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994). Asimismo, la Regla 36.3(e) de Procedimiento Civil, *supra*, R. Regla 36.3(e) dispone que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.

De modo que, la sentencia sumaria resulta adecuada en los casos donde no existen controversias de los hechos esenciales que hagan necesaria la celebración de un juicio. *Batista v. Sucn. Batista et al.*, 2025 TSPR 93, 216 DPR __ (2025). A esos efectos, solo resta aplicar el derecho a los hechos no controvertidos. *Íd.*

Es harto conocido que la parte que se opone a la solicitud de sentencia sumaria debe presentar la contestación a la misma dentro del término de veinte (20) días de su notificación. Regla 36.3(b) de Procedimiento Civil, *supra*. Si dicha parte no presenta la contestación dentro de este término, "se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". Regla 36.3(e) de Procedimiento Civil, *supra*.

De otra parte, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, R. 36, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas, supra*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte que se opuso a la petición de sentencia sumaria, llevando a cabo todas las inferencias permisibles a su favor. Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra. Íd.*

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

**B.**

La prenda es un derecho real de garantía sobre una cosa mueble que se constituye con la entrega de dicha cosa al acreedor o a una tercera persona, facultando su enajenación ante el

incumplimiento con la obligación. J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed. Barcelona, Ed. Bosch, Casa editorial, S.A., 1983, T. III, V. III, pág. 21; véase también *Eastern Sands v. Roig Commercial Bank*, 140 DPR 703, 710 (1996). A tenor con este contrato, se puede dar en prenda toda cosa mueble que esté en el comercio, que esté susceptible a poseerse. Art. 1763 del Código Civil de 1930, *"Código Civil de Puerto Rico" Edición de 1930* (Código Civil de 1930), 31 LPRA sec. 5022.

El Artículo 1756 del Código Civil de 1930, *supra,* sec. 5001, dispone los siguientes requisitos esenciales del contrato de prenda:

> (1) Que se constituya para asegurar el cumplimiento de una obligación principal.
> (2) Que la cosa pignorada o hipotecada pertenezca en propiedad al que la empeña o hipoteca.
> (3) Que las personas que constituyan la prenda o hipoteca tengan la libre disposición de sus bienes o en caso de no tenerla, se hallen legalmente autorizadas al efecto.
> Las terceras personas extrañas a la obligación principal pueden asegurar ésta pignorando o hipotecando sus propios bienes.

Otro requisito esencial de los contratos de prenda es que, vencida la obligación principal, la cosa dada en prenda puede ser enajenada para que el acreedor cobre su acreencia. Art. 1757 del Código Civil de 1930, *supra,* sec. 5002. Ante tal facultad de enajenación, el acreedor debe proseguir con el siguiente procedimiento para enajenar la prenda:

> El acreedor a quien oportunamente no hubiese sido satisfecho su crédito podrá proceder ante notario a la enajenación de la prenda. Esta enajenación habrá de hacerse precisamente en subasta pública y con citación del deudor y del dueño de la prenda, en su caso. Si en la primera subasta no hubiese sido enajenada la prenda, podrá celebrarse una segunda con iguales formalidades; y si tampoco diere resultado, podrá el acreedor hacerse dueño de la prenda. En este caso estará obligado a dar carta de pago de la totalidad de su crédito. Art. 1771 del Código Civil de 1930, *supra,* sec. 5030.

Empero, cuando se trata de prendas irregulares, aquellas que surgen de la entrega de dinero para garantizar la obligación, el

acreedor prescinde de los procedimientos legales de ejecución de esta. Prenda irregular es, por consiguiente, la que atribuye al acreedor de la propiedad de la cosa pignorada y el derecho a consumirlo a cambio de la obligación de devolver una cantidad igual. Puig Brutau *op. cit.*, pág. 391. A esos fines, el acreedor compensa su crédito con el que contra él tiene el deudor pignoraticio para la restitución de la suma que entregó en garantía. Diez Picazo y Ponce de León, Lucas, Sistema de Derecho Civil, 1994, pág. 508.

La obligación del acreedor a restituir la cosa surge inmediatamente cuando se paga la deuda. Si este pago se efectuara por un tercero, en determinadas circunstancias se puede dar el efecto de subrogación, caso en el que la obligación no se extingue y las garantías permanecen vivas. Este derecho es susceptible a renuncia, siempre que esta "sea clara, terminante, explícita e inequívoca". *Allied Mgmt. Grp., Inc. v. Oriental Bank*, 204 DPR 374, 401 (2020).

Por otro lado, distinto a la prenda, la fianza es un derecho personal de garantía mediante el cual, un fiador, quien es una tercera persona ajena a una relación jurídica existente o futura, se obliga frente al acreedor a cumplir por el acreedor en caso de no hacerlo. Art. 1721 del Código Civil de 1930, *supra,* sec. 4871; J. R. Vélez Torres, Curso de Derecho Civil: Derecho de Contratos, 1ra ed., San Juan, Ed. Revista Jurídica de la Facultad de Derecho de la INTER, 1990, T. IV, Vol. III, págs. 527-528.

Una de las principales características del contrato de fianza es que no se presume, dado que se requiere que sea expreso y no se extienda a más de lo contenido en el contrato. Art. 1726 del Código Civil de 1930, *supra,* sec. 4876. Pues, la intención y la voluntad del fiador en obligarse, debe constar de manera directa o indudable. *National City Bank v. Llonín*, 41 DPR 163, 169-170 (1930) citando a Manresa, Código Civil Español, 3era ed., T. 12, pág. 234.

**C.**

En nuestra jurisdicción, las relaciones que nacen de los contratos se rigen por los principios de la autonomía de la voluntad y *pacta sunt servanda*. *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Por un lado, la autonomía de la voluntad dispone que "[l]os contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Artículo 1207 del Código Civil de 1930, *supra*, sec. 3372; *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 187 (2022); *Engineering Service v. AEE*, 209 DPR 1012, 1027 (2022).  Por el otro, el principio de *pacta sunt servanda* expone que "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Artículo 1044 del Código Civil de 1930, *supra*, sec. 2994; *López v. González*, 163 DPR 275, 281 (2004).

Ahora bien, "[l]os contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Artículo 1210 del Código Civil de 1930, *supra*, sec. 3375. Para que un contrato se considere perfeccionado, deben concurrir tres (3) elementos; a saber, el consentimiento de los contratantes, el objeto y la causa. Artículo 1213 del Código Civil de 1930, *supra*, sec. 3391. El consentimiento "se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio". *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 229 (2007). En cuanto al objeto, este debe tratarse de una cosa determinada en cuanto a su especie. Artículo 1225 del Código Civil de 1930, *supra*, sec. 3423. Asimismo, la causa de cada contratante es "la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del

bienhechor". Artículo 1226 del Código Civil de 1930, *supra,* sec. 3431.

En esa misma línea, ante el incumplimiento de una obligación, la parte demandante mediante una acción de cobro de dinero tiene que probar ser acreedora de una deuda vencida, líquida y exigible. Sobre ese particular, el Tribunal Supremo de Puerto Rico definió que es "líquida" aquella deuda cierta y determinada, mientras que se considera "exigible" porque puede demandarse su cumplimiento. *RMCA v. Mayol Bianchi,* 208 DPR 100, 108-109 (2021). Por ello, "al alegarse que la cuenta es 'líquida y exigible' se están exponiendo hechos, a saber: que el residuo de la cuantía ha sido aceptado como correcto por el deudor y que está vencido". *Íd.* (*citando a Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950)).

### D.

Es doctrina reiterada en nuestro sistema de derecho que "[l]os derechos y obligaciones adjudicadas en el ámbito judicial, *mediante dictamen firme*, constituyen la ley del caso". *Mgmt. Adm. Servs, Corp. v. E. L. A.,* 152 DPR 599, 606 (2000). En específico, las determinaciones de un tribunal apelativo constituyen la ley del caso en todas aquellas cuestiones finales consideradas y decididas. *Cacho Pérez v. Hatton Gotay y otros,* 195 DPR 1, 9 (2016). Dichas determinaciones, como regla general, obligan tanto al tribunal de instancia como al que las dictó si el caso vuelve ante su consideración. *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005). La doctrina de la ley del caso responde a la necesidad de darle finalidad a las adjudicaciones judiciales. *Rosso Descartes v. BGF,* 187 DPR 184, 192 (2012).

### E.

Cuando existe una pluralidad de deudores respecto a una obligación, el derogado Código Civil de 1930, *supra,* distingue entre

las obligaciones mancomunadas y solidarias. Respecto a las primeras, cada deudor debe cumplir solamente con la parte de la prestación que le corresponda. En cambio, en una obligación solidaria cada acreedor posee el derecho a reclamarle a cualquiera de los deudores la totalidad de la prestación y cada uno de los deudores tiene la obligación de realizarla íntegramente. *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 977 (2021).

Como norma general, las obligaciones se presumen mancomunadas cuando existe pluralidad de deudores, salvo si las partes pactaron expresamente una relación solidaria o cuando la ley así lo establezca. *Pérez Hernández v. Lares Medical Center, Inc.*, supra, pág. 978; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 375 (2012). Ello se deriva del Artículo 1090 del Código Civil de 1930, *supra,* sec. 3101, que establece que "[l]a concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria".

Expuesta la normativa jurídica aplicable, procedemos a disponer del recurso instado ante nos.

### III.

Por estar íntimamente relacionados, procederemos a discutir los errores señalados en conjunto. Así, la controversia que tenemos ante nos es si procedía resolver sumariamente la causa de acción sobre incumplimiento de contrato presentada contra el matrimonio Ramón Martínez.

A juicio del foro primario, la parte apelante demostró que la causante Ramón Romero fungió como garantizadora solidaria de una obligación adquirida por el Sr. Ramón Miró. Determinó que el incumplimiento de repago del préstamo adquirido por el Sr. Ramón

Miró generó que Oriental procediera a utilizar los certificados de depósitos garantizados en prenda para saldar dicha obligación. Al así proceder, concluyó que, tras la prestación solidaria convenida por las partes, el matrimonio Ramón Martínez venía obligado a restituir las certificaciones de pago a la Sucesión Ramón Romero.

Por su parte, si bien la parte apelante no presentó una oposición a la solicitud de sentencia sumaria, insatisfecha con la decisión del foro *a quo*, comparece ante nos y manifiesta que el TPI incidió en su determinación. Lo anterior, pues la moción de sentencia sumaria surte insuficiente por no cumplir con las exigencias de la Regla 36.3 de Procedimiento Civil, *supra*. Argumenta que carece de evidencia fehaciente que sustente cada una de las alegaciones, en particular, no satisface los requisitos para una acción de reembolso ante la inexistencia de los certificados de depósito cancelados.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario no incidió en su determinación.

Como pormenorizamos anteriormente, según *Meléndez González et al. v. M. Cuebas*, supra, el primer paso del estándar de revisión de las solicitudes de sentencia sumaria es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. De igual modo, el segundo pilar exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*; *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. En el presente caso, la *Moción en Solicitud que se dicte Sentencia Sumaria Parcial* presentada por la parte apelada cumplió sustancialmente con los requisitos de forma del inciso (a) de la Regla 36.3 de Procedimiento Civil, *supra,* pues incorporó una exposición breve de las alegaciones de las partes; que

no existían asuntos en controversia; la reclamación respecto a la cual fue solicitada la sentencia sumaria; una relación concisa, organizada y en párrafos enumerados de los hechos materiales sobre los cuales no había controversia sustancial, con indicación de la prueba documental; las razones por las que debería dictarse la sentencia argumentando el derecho aplicable; y el remedio que debería ser concedido.

Por otro lado, el matrimonio Ramón Martínez no presentó oposición a la solicitud de sentencia sumaria. Es harto conocido que la parte que se opone a la solicitud de sentencia sumaria debe presentar la contestación a la misma dentro del término de veinte (20) días de su notificación. Regla 36.3(b) de Procedimiento Civil, *supra*. Si dicha parte no presenta la contestación dentro de este término, "se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal". Regla 36.3(e) de Procedimiento Civil, *supra*.

Conforme lo anterior, la solicitud de sentencia sumaria cumplió con los requisitos de forma de la Regla 36.3 de Procedimiento Civil, *supra*, y la misma se dio por admitida sin oposición, conforme al inciso (e) de dicha regla.

Habiendo cumplido con los primeros dos eslabones del análisis apelativo sobre las solicitudes de sentencia sumaria, debemos evaluar como tercer paso si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles están incontrovertidos.

La parte apelada incorporó en su solicitud de sentencia sumaria las determinaciones de hechos previamente adjudicadas por el foro primario en su *Sentencia Sumaria Parcial* emitida el 9 de enero de 2023, la cual constituye la ley del caso a esos efectos. *Félix*

*v. Las Haciendas,* supra. Asimismo, hizo referencia a la Carta de Pignoración y Autorización[7], el Contrato de Prenda[8] y el Pagaré[9], según surgen del expediente del caso. Además, por todo lo alegado en dicho escrito, anejó una declaración jurada ante notario por el Sr. Ángel Miguel Rodríguez Ramón, en representación de la Sucesión de la causante Ramón Romero.

Del expediente del caso se desprende que, el 21 de octubre de 2013, el Sr. Ramón Miró suscribió un segundo préstamo por la suma de $294,204.52 cuyo vencimiento fue fijado para el 21 octubre de 2018. Como garantía de dicha obligación, la causante Ramón Romero otorgó una "Cesión de Garantía de Préstamo u Otras Obligaciones"[10] en la que se asumió solidariamente la responsabilidad de garantizar el cumplimiento de la obligación principal contraída por el Sr. Ramón Miró. Cabe señalar que, en el momento en que se instó la *Demanda,* así como su contestación, la deuda no estaba vencida. No obstante, durante la tramitación del litigio, incluido el descubrimiento de prueba, la deuda advino vencida, líquida y exigible conforme los términos y condiciones pactados en el contrato de préstamo. Nótese, además, que del expediente ante nuestra consideración no surge que la parte apelante haya impugnado la existencia de la obligación ni que haya controvertido con evidencia fehaciente las alegaciones relativas a la liquidez, validez o exigibilidad de la deuda. Por consiguiente, tales extremos permanecieron sustancialmente incontrovertidos a lo largo del procedimiento.

De entrada, en el caso de autos la garantía otorgada por la parte apelada constituyó una prenda, más no una fianza conforme expone la parte apelante. Esto, pues una de las características

---

[7] SUMAC TA, Exhibit Núm. 1, Apéndice Núm. 1, pág. 013.
[8] *Íd.,* pág. 014-015.
[9] Autos originales, Tomo 4, Apéndice E, pág. 060.
[10] *Íd.,* pág. 058.

principales del contrato de fianza es que no se presume y requiere que sea expreso. Art. 1726 del Código Civil de 1930, *supra*. Al igual que la prenda, la fianza emerge por virtud de una obligación existente, con la diferencia de que la fianza es una garantía personal que no tiene el efecto de gravar bienes específicos. A saber, la fianza no crea derechos reales, distinto a la prenda que constituye un derecho real.

Tal como mencionamos en el acápite anterior, la prenda es un derecho real susceptible a enajenación por incumplimiento de la deuda principal. Como norma general, ante el incumplimiento de la deuda, el acreedor dispondrá del bien en garantía mediante subasta pública para satisfacer lo debido. En cambio, cuando se trata de una prenda irregular, un depósito u otras cosas fungibles, a ser restituidas en igual cantidad, no surte el procedimiento general de la subasta. Así, cuando el depósito se realice en poder de un tercero, este quedará obligado a entregarlo al acreedor o a restituirlo al depositante, según lo pactado. Puig Brutau *op. cit.*, pág. 391.

En el caso de autos, surge de la "Cesión de Garantía de Préstamo u Otras Obligaciones", que la causante Ramón Romero se comprometió solidariamente a garantizar el préstamo del Sr. Ramón Miró. En ese sentido, nuestro ordenamiento jurídico claramente puntualiza que, ante una relación solidaria, el deudor garantiza la absoluta prestación, aunque no la debe en su totalidad, ya que una vez realizado el pago puede exigir de los demás la parte que a ellos corresponda. Por lo que, una vez vencida la deuda, la garantía pignorada serviría como pago de lo debido. Como vemos, dicha cesión en garantía no manifiesta que la causante Ramón Romero haya otorgado la garantía en concepto de fianza, sino en garantía de prenda por lo que se trató de un derecho real donde el acreedor irá contra la prenda ante el incumplimiento de la deuda.

Como hemos destacado, ciertamente existe una deuda de la que la parte apelada son garantizadores solidarios. Por ello, en estricto derecho una vez éstos satisfagan la deuda al acreedor, tienen una acción subrogatoria contra el deudor principal, es decir, la parte apelante. En atención a lo anterior, el préstamo en controversia quedó vencido el 21 de octubre de 2018. De haberse satisfecho la deuda, el acreedor (Oriental) restituiría la garantía pignorada. Sin embargo, de no satisfacerse la misma, la prenda garantizaría el pago de lo debido.

Por consiguiente, distinto a lo que alega la parte apelante, resulta inconsecuente la evidencia física de la ejecución del certificado de depósito, toda vez que la garantía sirvió como un derecho real contra el cual los acreedores tenían derecho a ejecutar una vez vencida la deuda, puesto que los apelados se comprometieron de forma solidaria. Al así suceder, ahora los apelados se subrogan en la posición del acreedor para recobrar la garantía pignorada.

Por todo lo anterior, el foro primario no incidió en los errores señalados.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones